IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| HEATHER JOHNSON, | * | |
|    Debtor | * | |
| | * | |
| HEATHER JOHNSON, | * | CASE NO. 1:05-bk-00666MDF |
|    Plaintiff | * | |
| | * | |
| v. | * | ADV. NO. 1:05-ap-00162 |
| | * | |
| ACCESS GROUP, INC. and | * | |
| EDUCATIONAL CREDIT | * | |
| MANAGEMENT CORPORATION, | * | |
|    Defendants | * | |

## OPINION

The narrow issue for decision is whether certain student loan claims currently held by Access Group, Inc. ("Access") in the bankruptcy case of Heather Johnson ("Debtor") were made under a program funded in whole or in part by a nonprofit institution. Pursuant to 11 U.S.C. § 523(a)(8), student loans made under a program funded by a nonprofit institution are presumed to be nondischargeable absent proof that repayment would be an undue hardship to the debtor.

### Procedural and Factual History

In July 2001, Heather Johnson ("Debtor") obtained a Juris Doctor degree from the Widener School of Law. Her legal education was funded through a series of federally guaranteed student loans (the "ECMC Loans")[1] and four private loans (the "Access Loans"). The private loans were originated by National City Bank ("NCB") and were subject to an agreement dated April 1, 1998 whereby loans originated by NCB between 1998 and 2000 were assigned to

---

[1] The parties agreed that the ECMC Loans are education loans subject to the provisions of 11 U.S.C. § 523(a)(8).

Access.[2] Access is a nonprofit corporation organized under the laws of Delaware to administer the Access Group Programs, which make loans available to graduate students training for various professions.[3] Access established a Delaware statutory trust "for the purpose of holding in trust funds which are pledged for the payment of loan default claims on certain private student loans." [Adversary Docket Item 19, Supplement to Testimony of Christopher J. Mulvihill, Exhibit Supplement 3]. There appears to be no dispute that the loans made to Debtor by NCB were purchased by Access pursuant to the April 1, 1998 agreement. There also appears to be no dispute that Access, in addition to The Educational Resource Institute, Inc. ("TERI"), guaranteed payment of the loans.[4]

To obtain the Access Loans, Debtor completed an Access Group Loan Program application for each loan extended between 1998 and 2000.[5] Each application included a

---

[2] Access's commitment to purchase these loans was subject to its ability to obtain funding for the purchase.

[3] The loans are made available through five (5) separate programs including Law Access®, Business Access®, Graduate Access®, Medical Access®, and Dental Access® loans.

[4] In its brief, Access states that it "originated, marketed, guaranteed, funded and purchased the Access Loans at issue." (Brief at p. 8.) In her reply brief, Debtor does not challenge this assertion, except to argue that it was NCB, not Access, who provided the original funds for the loan.

[5] In each form Debtor "acknowledge[d] that Access Group Programs are funded in part by nonprofit institutions, and that [the loan] is therefore subject to the limitations on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code." The inclusion of this provision in the loan application does not dictate the outcome of this case. The right to discharge a debt in bankruptcy cannot be waived by a pre-petition agreement. *See In re Kroen*, 280 B.R. 347 (Bankr. D.N.J. 2002) (debtor's promise not to seek discharge of debt to divorce attorney violated public policy and was not enforceable).

provision that Debtor would pay a guarantee fee and a supplemental guarantee fee to TERI as an inducement to NCB to make the loan.

After she obtained her law degree Debtor was unable to obtain permanent employment as an attorney. She filed the instant chapter 7 case on February 9, 2005 and received a discharge on June 10, 2005. On September 13, 2005, an order was entered granting Debtor's motion to reopen the case to allow her to file a complaint seeking a discharge of her student loan debt. Trial on the complaint commenced on March 23, 2006. At trial Debtor moved for a directed verdict, arguing that the loans were not protected by 11 U.S.C. § 523(a)(8) because they were not guaranteed by the federal government. Access responded that the loans were not subject to discharge because they were made under a program funded in part by nonprofit institutions. The trial was then continued *sine die* to allow the parties to file briefs on the issue of whether the Access loans fall within the scope of § 523(a)(8). Briefs have been filed, and the matter is ready for decision.[6]

**Discussion**

Under 11 U.S.C. § 523(a)(8), federally guaranteed student loan debts are presumed to be nondischargeable in bankruptcy. Private student loan debts also enjoy this presumption if the loan was funded in whole or in part by a nonprofit institution. The dispute in this case focuses on the meaning of the term "funded" in the context of 11 U.S.C. § 523(a)(8).

---

[6]I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(I) and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

3

Debtor's petition was filed on February 9, 2005, prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119 Stat. 23 ("BAPCPA").[7] Under the law as it existed prior to the enactment of BAPCPA, 11 U.S.C. § 523(a)(8) provided, in pertinent part, that

> a discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
>
> for an educational . . . loan . . . made under any program funded in whole or in part by a governmental unit or nonprofit institution . . . unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

Section 523(a)(8) includes four elements: "(a) an educational loan must be made (b) under a program (c) funded (d) by a nonprofit institution." *In re Taratuska*, 374 B.R. 24, 29 (Bankr. D. Mass. 2007). In the case before me, there is no dispute that the loans made to Debtor were educational loans. There is no dispute that Access operates a "program" – the Law Access Program – to provide educational loans to law students. There also is no dispute that Access is a nonprofit institution. The sole issue raised by Debtor is whether Access "funded" the loans that she seeks to discharge. Debtor avers that it was NCB, a for-profit banking institution, who advanced the funds and, therefore, "funded" the loans. Access admits that the loans were made

---

[7] In their briefs, the parties have quoted the language of § 523(a)(8) under BAPCPA, which was the law in effect when the instant adversary case was filed. Generally, dischargeability determinations are to be made as of the date of the filing of the bankruptcy petition, not the date of the filing of the adversary case. *In re Combs*, 101 B.R. 609, 614 (B.A.P. 9th Cir. 1989) *cited in In re Froncillo*, 155 Fed. Appx. 608, 610 (3d Cir. 2005). The outcome of this case would remain the same under either version of § 523(a)(8).

using funds provided by NCB, but it asserts that Debtor's definition of the term "funded" is too narrow and not in keeping with the broader definition contemplated by the statute.

"By enacting section 523(a)(8), Congress sought principally to protect government entities and nonprofit institutions of higher education – places which lend money or guarantee loans to individuals for educational purposes – from bankruptcy discharge." *In re Segal*, 57 F.3d 342, 348 (3d Cir. 1995).[8] But as several courts have noted, the inquiry is not restricted to whether an educational loan was made by a nonprofit institution, but also whether the loan was made as part of a *program*. *Id.* at 347. "[T]he plain language of § 523(a)(8) indicates that it is the *program* that need be funded by a nonprofit institution. Section 523(a)(8) does not define 'program,' but the use of the modifier 'any' suggests a broad definition. Congress did not use language indicating that the loan itself must be funded by a nonprofit institution, but that the program pursuant to which the loan was made be funded in part by a nonprofit institution." *In re Pilcher*, 149 B.R. 595, 598 (B.A.P. 9th Cir. 1993) (italics in the original). Citing *In re Hammarstrom,* 95 B.R. 160, 165 (Bankr. N.D. Cal.1989), the *Pilcher* court further found that by using the broad language "made under any program funded in whole or in part by . . . a nonprofit institution," Congress included loans made under a program in which a nonprofit institution

---

[8]*Segal* provides a good example of a loan that is not subject to § 523(a)(8). In *Segal*, a nonprofit hospital provided a low-interest loan to pay off a physician's student loans as an inducement to employment. The employment contract contained a provision in which the physician agreed to repay the hospital. After the physician filed a bankruptcy petition, the hospital sought to invoke § 523(a)(8) to protect its loan under the contract. The Court of Appeals held that "loans made pursuant to the terms of an employment contract which are used, in turn, to repay educational debt are not, themselves, non-dischargeable educational loans within the meaning of 11 U.S.C. § 523(a)(8)." *In re Segal*, 57 F.3d at 350.

5

plays "any meaningful part" in making funds available to students. *In re Pilcher*, 149 B.R. at 598.[9]

As recently observed by the Bankruptcy Court for the Western District of Missouri, courts do not agree on the interpretation of the terms "under a program" or "funding" of the program. *In re Sears*, 393 B.R. 678, 680-81 (Bankr. W.D. Mo. 2008). Some courts have determined that a private loan is brought within the protections of the statute if it is guaranteed by a nonprofit institution. *See In re O'Brien*, 419 F.3d 104, 106 (2nd Cir. 2005) (term "funded" modified the word "program" rather than the word "loan," and did not require nonprofit institution that guaranteed debtor's obligation to fund debtor's loan for discharge exception to apply). At least one court has insisted that a nonprofit institution must not only guarantee the loan, but also must be obligated to repurchase the loan even absent a default. *Compare In re Hammarstrom*, 95 B.R. at 166 (by agreeing to purchase private loans, nonprofit institution performed role of "funding" educational loan).

In the instant case, Debtor's obtained student loan funds from NCB on an application provided by Access for a loan from the Law Access Program. Access is the nonprofit corporation that administers the Law Access Program. Access maintains a statutory trust to fund the guarantee that it provides to lenders, such as NCB, who front student loan funds as part of the

---

[9] In *Pilcher*, the debtor sought to discharge a Law Access Program loan obtained through Norwest Bank. The complaint identified HEMAR Service Corporation of America ("HEMAR Service") as the holder of the loan. HEMAR Service had serviced the loan on behalf of Norwest Bank and later the Student Loan Marketing Association ("Sallie Mae"), after Norwest sold the loan to Sallie Mae. HEMAR Insurance Corporation of America ("HEMAR Insurance") issued a surety bond for the loan and subsequently became the holder when Sallie Mae made a claim under the bond and assigned the loan to HEMAR Insurance. The court found that HEMAR Insurance, HEMAR Service, and Norwest were all "participants" in the Law Access program. *In re Pilcher*, 149 B.R. at 596.

Case 1:05-ap-00162-MDF   Doc 89   Filed 12/03/08   Entered 12/04/08 12:10:57   Desc
Main Document      Page 6 of 7

Law Access Program. Access, along with TERI, guaranteed the payment of Debtor's loans.[10] Access agreed to purchase the loans made to Debtor prior to the date on which the loans were made, and the purchase was consummated. Under the decisions cited above, Access's administration of the Law Access Program, its guarantee of Debtor's loans, and its purchase of those loans each constitute "funding" for purposes of § 523(a)(8). Accordingly, I conclude that the claims held by Access in Debtors bankruptcy case were for educational loans funded in part by a nonprofit institution. Therefore, they are educational loans that may be discharged in bankruptcy only upon a showing by Debtor of "undue hardship" as that term has been defined by the courts.

An appropriate order will be entered.

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: December 3, 2008

*This document is electronically signed and filed on the same date.*

---

[10]The uncontested assertion by Access that it originated and funded the loans that it purchased from NCB poses a riddle. Why would Access purchase a loan that it "originated" and "funded?" Resolution of this issue, however, does not change the outcome one way or the other and may be ignored. *See In re Sears*, 393 B.R. at 682 (court did "not need to put a fine point on the directness of the funding or the degree of involvement" of a nonprofit to determine whether the loan was protected by § 523(a)(8). The defendant's "obligation to repurchase the loans and its near-plenary control of the [] Program under which the loan was made satisfies even the strictest interpretation of § 523(a)(8).")

7